**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**LARRY MULDROW**                                                                                          **PLAINTIFF**

**V.**                                            **4:04CV00778-WRW
                                                  4:07CV00033-WRW**

**DEPARTMENT OF DEFENSE, et al**                                                                **DEFENDANTS**

<u>**ORDER**</u>

Pending is Defendants' Motion for Summary Judgment (Do. No. 81), to which Plaintiff has responded (Doc. Nos. 216, 217, 224, 228). Also, pending is Defendants' Motion to Dismiss (Doc. No. 203), to which Plaintiff has responded (Doc. Nos. 216, 220, 231).

Plaintiff brings this action under the Rehabilitation Act claiming discrimination for his disability, which Plaintiff describes as "mood disorder and major depression."[1] Plaintiff also brings claims under Title VII alleging discrimination based on his race. Plaintiff alleges retaliation and breach of contract by Defendants. Defendants request summary judgment for these claims since, they argue, there are no genuine issues of material fact.

Plaintiff also brings a claim under the Federal Tort Claims Act for intentional infliction of emotional distress. Defendants ask that the claim be dismissed for lack of jurisdiction and failure to state a cause of action.

**I. Background**

Plaintiff Larry Muldrow worked at the Army and Air Force Exchange Service ("AAFES") as an Exchange Safety and Security Assistant from November 9, 1999 to January 11, 2000. As an Exchange Safety and Security Assistant, Plaintiff conducted surveillance in

---

[1] Doc. No. 200.

retail, food, and services facilities to detect shoplifting, pilferage, or other illegal or dishonest acts.[2]

On January 10, 2000, while at the AAFES service station, Plaintiff pumped $14.59 worth of gasoline into his personal vehicle and purchased approximately $4.00 worth of other items. The clerk rang up the sale of the items, but failed to include the gasoline. The clerk asked if there was "anything else," and Plaintiff responded "No." The clerk presented Plaintiff with a credit card receipt, which Plaintiff signed. Plaintiff asserts that he did not notice that the receipt did not include the gasoline. Plaintiff then left the facility and was later arrested by the Jacksonville Police for driving away without paying for his gasoline.[3]

The following day, Plaintiff met with his immediate supervisor, Ms Fortsten, and General Manager, Robert Pflager and was terminated for dishonesty. Mr. Pflager stated that he routinely terminated employees for theft or fraud irrespective of their intent.[4] He also stated that it was base policy for civilian shoplifters to be turned over to local police and charged. On January 11, 2000, Plaintiff informed Mr. Pflager for the first time of his alleged disability. Mr. Pflager was aware that Plaintiff had a problem with memory and was seeing a psychiatrist, but he was unaware of Plaintiff's specific medical condition.[5] Plaintiff alleges that while working at the AAFES he suffered from a mood disorder that affected his concentration, memory, and sleep.[6]

---

[2]Doc. No. 82.

[3]Plaintiff was found not guilty in Jacksonville Municipal Court because he lacked the requisite intent.

[4]Doc. No. 82.

[5]Id.

[6]Id.

Plaintiff appealed his termination to the AAFES Hearing Examiner who recommended that Plaintiff be reinstated, but to a position unrelated to loss prevention.[7] This recommendation was adopted by the Appellate Authority.

Plaintiff was rehired at the Little Rock Air Force Base. After being rehired, Plaintiff then filed one formal Equal Employment Opportunity ("EEO") complaint after speaking with an Air Force EEO official Dan Daniel. Mr. Daniel advised Plaintiff that he should pursue his complaints with the AAFES as the issues did not involve the Air Force.[8] Six years later, Plaintiff filed the present tort claim against the Air Force.

Plaintiff filed his complaint against the AAFES. The EEO office received the complaint on March 27, 2000. AAFES sent Plaintiff a Notice of Investigation of Discrimination Complaint on June 16, 2000 stating the issues to be investigated. The issues in the Notice were whether or not Plaintiff was discriminated against because of his race and alleged disability in the following ways: (1) Plaintiff's June 16, 2000 termination; (2) after termination, whether he was allegedly not briefed on employment benefits, was not provided copies of regulations, information in his doctor's statements was released, and information was withheld from him; (3) whether he was not wanted or not welcomed in the security position and was denied access to the incident reporting system.[9]

Plaintiff requested an administrative hearing and an EEOC Administrative Judge, Tammy Whitaker, was assigned the case. On November 15, 2002, Judge Whitaker, without a hearing,

---

[7]*Id.*

[8]Doc. No. 204.

[9]Doc. No. 82.

found that Plaintiff was not a victim of unlawful discrimination.[10]  Plaintiff appealed the decision, but it was denied.  He then asked for reconsideration which also was denied.  Plaintiff filed this action to consider the same issues.

## II. Standards

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[11]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[12]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[13]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[14]  I must view the facts in the light most favorable to the party opposing the motion.[15]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

---

[10]*Id.*

[11]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[12]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[13]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[14]*Id.* at 728.

[15]*Id.* at 727-28.

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[16]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[17]

A motion to dismiss should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts which would entitle him to relief.[18] The complaint's allegations must be accepted as true; and, the complaint, and all reasonable inferences arising from it, must be construed in a plaintiff's favor.[19] A complaint should not be dismissed merely because the complaint does not state with precision all elements that give rise to a legal basis for recovery.[20]

### III. Discussion

#### A. Rehabilitation Act

---

[16] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[17] *Anderson*, 477 U.S. at 248.

[18] *Thomas W. Garland, Inc. V. City of St. Louis*, 596 F.2d 784, 787 (8th Cir. 1979).

[19] *United States v. Mississippi*, 380 U.S. 128, 143 (1965); *Bennett v. Berg*, 685 F.2d 1053, 1059 (8th Cir. 1983); *Bramlet v. Wilson*, 495 F.2d 714, 717 (8th Cir. 1974).

[20] 28 U.S.C. § 2401(b).

Plaintiff alleges disability discrimination in his complaint.  Plaintiff argues that Defendants violated the Rehabilitation Act because Defendants did not accommodate Plaintiff's disability, and Plaintiff was treated differently than other, non-disabled, employees.

Discrimination is not defined in the Rehabilitation Act.  However, the Rehabilitation Act adopts the same standards as the American with Disabilities Act ("ADA") in determining whether discrimination occurred.[21]  Therefore, cases interpreting discrimination under the ADA can be applied to cases involving the Rehabilitation Act.[22]

The Rehabilitation Act provides:

> No other qualified individual may, solely by reason of his or her handicap, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal assistance, any program or activity of any executive agency.[23]

To sustain a claim under the Rehabilitation Act, Plaintiff needs to show he was disabled, was otherwise qualified, and was a victim of discrimination solely because of his disability.[24]

**1.  Disparate Treatment**

Plaintiff alleges both failure to make reasonable accommodations and disparate treatment.  The Rehabilitation Act recognizes both.  In order to make a claim of disparate treatment, Plaintiff must show discriminatory intent.[25]  Plaintiff contends that Defendants treated him differently from non-disabled employees solely because of his disability since other, non-

---

[21]*Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004).

[22]*Ballard v. Ruben*, 284 F.3d 957, 960 (8th Cir. 2002).

[23]29 U.S.C. § 794(a).

[24]*Peebles*, 354 F.3d at 765.

[25]*Id.* at 766.

disabled, employees were not fired for theft.  Here, the General Manager stated that he routinely separated employees for theft or fraud and did not consider the intent of any employee in those cases.[26]

Further, Plaintiff did not offer any evidence that non-disabled employees were treated differently.  Plaintiff argues that a non-disabled employee, Wayne Reed, engaged in the same conduct as Plaintiff, but was not separated.  However, according to the administrative record, Mr. Reed was separated for cause.  Since Plaintiff has failed to show that he was separated solely for his disability and did not show that he was treated differently than non-disabled employees, Plaintiff's claim must be examined as a failure to make reasonable accommodations.

### 2. Reasonable Accommodations

Under the Rehabilitation Act, discrimination for failure to accommodate occurs when an employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.[27]  Here, Plaintiff alleges that Defendants did not accommodate his disabilities because it ignored his intent when he left the AAFES without paying for his gasoline.

Discrimination in a reasonable accommodation case is framed in terms of the failure to fulfill an affirmative duty.  Under the Rehabilitation Act, employers are required to modify their work requirements to enable disabled individuals to have the same opportunities as their non-

---

[26]Doc. No. 82.

[27]29 C.F.R. 1630.9(a) (2003).

disabled counterparts.[28] To impose this duty, the employee must request accommodation for a disability.[29] The employee must provide the employer with enough information to know of both the disability and the desire for an accommodation.[30] Discrimination then occurs if the employer fails to comply with this legally imposed duty by not making a good faith effort to assist the employee.[31]

Reasonable accommodation claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis. Rather, a "modified burden-shifting analysis" is used.[32] A modified burden-shifting analysis is used because failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive, but as failure to satisfy a duty.[33]

Plaintiff must show that: (1) the employer knew about the employee's disability, (2) the employee requested accommodations or assistance for his disability, (3) the employer did not make a good faith effort to assist the employee in seeking accommodations, and (4) the employee could have been reasonably accommodated but for the lack of good faith.[34] Here, Plaintiff neither informed Defendants about his disability nor asked for accommodations or

---

[28] *Peebles*, 354 F.3d at 767.

[29] *Id.*

[30] *Ballard*, 284 F.3d at 960.

[31] *Peebles*, 354 F.3d at 767.

[32] *Id.*

[33] *Id.*

[34] *Ballard*, 284 F.3d at 960.

assistance.  An employer only has the duty to accommodate when it knows of an employee's disabilities.[35]  So, as a matter of law, Plaintiff's claim under the Rehabilitation Act fails.

Also, Plaintiff is not claiming a denial of any claim relating to the performance of his job. Plaintiff asserts that his disability makes it difficult for him to remember instructions.  Plaintiff was given written reminders.  However, Plaintiff does not argue that he was separated because he could not remember instructions.  Rather, Plaintiff argues that Defendants failed to accommodate his disability since he was fired for leaving without paying for his gas irrespective of intent.  In order to be protected by the Rehabilitation Act, the disability must substantially limit his or her ability to work.[36]  Plaintiff's case therefore fails under this analysis, since Plaintiff's claim surrounds the General Manager's policy of separating employees for theft and not a disability that limits his ability to work.

In conclusion, Plaintiff claims under the Rehabilitation Act fail.  Plaintiff has not established discriminatory intent nor has he shown that Defendants failed to reasonably accommodate his disability.  Since Defendants were not aware of Plaintiff's disability, there was no duty to accommodate.  Even if Defendants were aware of Plaintiff's disability, Defendants provided reasonable accommodations by providing him with written reminders.  Plaintiff was not fired because he could not remember instructions, but was terminated because he left without paying for his gas.  Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claim under the Rehabilitation Act is GRANTED.

**B.  Title VII**

---

[35]*Id.*

[36]*Fjellestad v. Pizza Hit of Am., Inc.*, 188 F.3d 944 (8th Cir. 1999).

Plaintiff alleges that he was discriminated against because of his race.  Title VII of the Civil Rights Act of 1964 states that "it shall be an unlawful employment practice for an employer (1) to . . . discharge any individual, or other to discriminate against any individual . . . because of such individuals race, color, . . . national origin."[37]

Plaintiff has not presented any direct evidence of discrimination, and will, therefore, be required to establish his case with circumstantial evidence under the three-prong burden-shifting test of *McDonnell Douglas Corp. v. Green*.[38]  Under this test, Plaintiff has the initial burden to prove by a preponderance of the evidence a *prima facie* case of the discrimination; that is, facts sufficient to give rise to a presumption that the employment decision was motivated by discrimination.  If Plaintiff makes this showing, the burden then shifts to Defendants to articulate some evidence that the employment decision was based on legitimate, nondiscriminatory reasons.  Plaintiff then must prove by a preponderance of the evidence that the legitimate reasons offered by Defendants were merely a pretext to mask the true reason, discrimination.[39]  The ultimate burden of persuading the trier of fact that Defendants intentionally discriminated against him remains at all times with Plaintiff.[40]

---

[37] 42 U.S.C. § 2000e-2(a)(1).

[38] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

[39] *Id.*; *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1981); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775-777 (8th Cir. 1995).

[40] *Burdine, supra* at 253; *Hicks, supra* at 416; *Hutson, supra* at 777.

If Plaintiff can establish his *prima facie* case, then an inference or rebuttal presumption that intentional discrimination is created.[41]  "The fundamental purpose of the *prima facie* case is to require the plaintiff to show (1) that an adverse employment action occurred, and (2) that the most common explanations for an adverse employment action, such as incompetence, are not applicable."[42]

In order to establish his *prima facie* case, Plaintiff must show the following: (1) that he is a member of a protected group; (2) that he is qualified for the position; (3) an adverse action was taken against him; and (4) that action occurred in circumstances giving rise to an inference of discriminatory motivation.[43]

It is uncontested that Plaintiff is African-American, that he was qualified for his position, and that Plaintiff's employment was terminated.  Plaintiff, however, has failed to allege sufficient facts showing an inference of discriminatory motivation.  Plaintiff offers no evidence that give rise to an inference that his supervisor was motivated to fire him because of his race.

Even, assuming Plaintiff has met his burden of proving a *prima facie* case, Defendants provided a legitimate, nondiscriminatory reason for the adverse employment action.[44]  Plaintiff's employment was terminated because Plaintiff drove off without paying for gas, and it is Defendants' policy to terminate anyone for theft or dishonesty, irrespective of intent.

---

[41]*Hicks, supra* at 416; *Hutson, supra* at 776; *Hardin v. Hussman Corp.*, 45 F.3d 262, 264 (8th Cir. 1995).

[42] *Hudson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995).

[43]*Thomas v. Runyon*, 108 F.3d 957 (8th Cir. 1997) (citing *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995).

[44]*McDonnell Douglas* at 802.

Plaintiff contends that Defendants allowed another employee, Wayne Reed, to continue working after engaging in the same conduct. However, these facts do not present a reason for disbelieving Defendants' actions. Further, the administrative record indicates that Mr. Reed was separated for cause - - like Plaintiff. Thus, Defendants have produced sufficient evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

The burden now shifts to Plaintiff to show that Defendants' stated reasons are pretextual. Plaintiff argues that the theft allegations were a pretext for replacing him with a person named Cherri Allen. Plaintiff offers no evidence to suggest Defendants' allegations were false. Also, Plaintiff has failed to provide sufficient evidence that the reason given was pretext for the disparate treatment. Finally, there is no evidence that Cherri Allen replaced Plaintiff or is employed at the AAFES at all. A human resource assistant at the Little Rock AFB Exchange stated in her affidavit that no one by that name worked there. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claim of discrimination in violation of Title VII is GRANTED.

**C. Retaliation Claim**

Plaintiff alleges a violation of Title VII's retaliation provision. Title VII of the Civil Rights Act of 1964 forbids an employer from "discriminating against" an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testifies, assisted, or participated in a Title VII proceeding or investigation.[45] Plaintiff contends that he was retaliated against for his participation in the complaint process and suffered

---

[45] 42 U.S.C. § 2000e-3(a).

a tangible harm when the Appellate Authority recommended that he be reinstated to a different position.

Defendants argue that Plaintiff's claim for retaliation cannot be heard because he did not raise this claim at the administrative level.  Section 717(c) of the Civil Rights Act allows aggrieved employees to file a civil action in a federal district court to review their claim of employment discrimination.  However, the employee must first seek relief in the agency that has allegedly discriminated against them.

A Title VII plaintiff must exhaust administrative remedies before bring suit in federal court.  A claimant must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."[46]  If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.  Allowing claims to be brought in court, outside the scope of the EEOC charge, would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party notice."[47]

Here, Plaintiff presented the EEOC with issues relating only to race discrimination and disability discrimination, not retaliation.  Since Plaintiff did not present the retaliation claim to the EEOC, he has failed to exhaust his administrative remedies.  Thus, Defendants' Motion for Summary Judgment as to the Retaliation claim is GRANTED.

**D. Breach of Contract**

---

[46]42 U.S.C. § 2000e-5(e).

[47]*Cottrill v. MFA, Inc.*, 443 F.3d 629 (8th Cir. 2006).

Plaintiff next argues that he had an employment contract with Defendants. However, he does not provide any evidence or relevant AAFES regulations to substantiate his claim. "Employees" under the AAFES regulations are defined as "Federal employees of an instrumentality of the United States, who are *appointed* to their positions."[48] Plaintiff, in his complaint, referred to himself as being employed with the AAFES, but he provides no evidence of a contract. Since Plaintiff has provided no facts to show a contract existed and referred to himself as an employee, Defendant's Motion for Summary Judgment as to the Contract Claim is GRANTED.

### E. Federal Tort Claims Act - Intentional Infliction of Emotional Distress

The Federal Tort Claims Act requires that a claim be filed with the appropriate agency within two years after the claim accrues.[49] A claim generally accrues for the Federal Tort Claim Act when the plaintiff is injured.[50] However, under some circumstances the claim might not accrue until the plaintiff knows or reasonably should have known of both the injuries existence and its cause.[51] To avoid the two year limitation, the plaintiff must show that he had no reason to believe that he had been injured by an act or omission by the government.[52]

Plaintiff filed this action six years after Plaintiff spoke to Mr. Daniel, where the alleged incident of intentional infliction of emotional distress occurred, or four years too late under the

---

[48] AR 60-21/AFR 147-15, Ch. 1 (emphasis added).

[49] *T.L. ex rel. Ingram v. United States of America*, 443 F.3d 956, 961 (8th Cir. 2006).

[50] *Osborne v. United States*, 918 F.2d 724, 731 (8th Cir. 1990).

[51] *Slaapen v. United States*, 990 F.2d 1038, 1041 (8th Cir. 1993).

[52] *Garza v. United States Bureau of Prisons*, 284 F.3d 930, 934 (8th Cir. 2002).

Federal Tort Claims Act.  Plaintiff argues that he did not file his tort claim with the Air Force because he was misled by Mr. Daniel; he also argues that Mr. Daniel's statement was itself a tort.  In order toll the statute of limitations, Plaintiff must show that he had no reason to believe he was injured by an act or omission by the government.  Plaintiff has failed to do so.

Mr. Daniel did not conceal that Plaintiff had been stopped by the military police. Plaintiff knew that he had claims under the Federal Tort Claims Act, and Mr. Daniel did nothing to conceal that Plaintiff was detained by the military police.  The rationale behind extending the statute of limitations is to protect plaintiffs who are blindly unaware of their claim because the injury has not yet manifested itself.  Here, Plaintiff was not blindly unaware of the claim, and Plaintiff should have filed his claim within two years after the incident occurred.

In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff alleges that his tort claim is against Mr. Daniel and no others.  In order to establish the tort of intentional infliction of emotional distress or outrage, the Arkansas Supreme Court states that a plaintiff must demonstrate the following elements:

> (1) the actor intended to inflict emotional distress or know or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.[53]

Plaintiff alleges that Mr. Daniel intentionally inflicted distress upon him.

Mr. Daniel's actions do not rise to the level of extreme and outrageous, beyond all possible bounds of decency, or utterly intolerable in a civilized community.  Mr. Daniel simply

---

[53]*McQuay v. Guntharp*, 963 S.W.2d 583, 585 (Ark. 1985).

advised Plaintiff that his claim is against the AAFES and not the Air Force.  So, even if the statute of limitations were extended to six years, Plaintiff's claim fails since he is unable to establish the necessary elements of the tort.

## IV.  Conclusion

Based on the finding and fact and conclusions of law above, Defendants' Motion for Summary Judgment (Doc. No. 81) is GRANTED.  Defendants' Motion to Dismiss is GRANTED.  Plaintiff's Motion for Order to Suppress the ALJ Decision is also DENIED as MOOT.

IT IS SO ORDERED this 13th day of February, 2008.

                                                                /s/Wm. R. Wilson, Jr.
                                                    UNITED STATES DISTRICT JUDGE